**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
LOWELL YOUNG and JOAN YOUNG     :
                                : CIVIL ACTION
          Plaintiffs            :
                                :
          vs.                   : NO. 15-CV-5436
                                :
THE HOME DEPOT U.S.A., INC.     :
d/b/a/ THE HOME DEPOT, and      :
THE HOME DEPOT, INC., d/b/a     :
HOME DEPOT                      :
                                :
          Defendants            :
                                :
          vs.                   :
                                :
NATE'S ON THE GO                :
CONSTRUCTION, INC.              :
                                :
          Third Party Defendant :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                              **September 29, 2016**

       This civil action is presently before us on Motion of
Defendants, The Home Depot U.S.A., Inc. and the Home Depot, Inc.
(hereafter "Home Depot") for the entry of Summary Judgment in
their favor and dismissing Plaintiffs' Complaint with prejudice.
For the reasons which follow, the motion shall be granted in
part.

## Factual Background

       On May 24, 2005, Plaintiffs Lowell and Joan Young entered
into a Home Improvement Installation Contract with Home Depot for

the installation of new siding on their home in Wayne,
Pennsylvania.   According to the deposition testimony of Lowell
Young, the contract was negotiated at the local Home Depot in
King of Prussia, Pennsylvania at a total cost - including
installation - of $20,115, and the work was completed by early
July, 2005.   Prior to the installation of the new vinyl siding,
there had never been any problems with the existing siding,
described as T1-11, although it required re-staining every few
years.   The new siding was installed over the existing siding and
the plaintiffs knew of no problems with the siding until
November, 2013 when they tried to sell the house.   (Young
Deposition, attached to Home Depot's Motion for Summary Judgment
as Exhibit "C," at pp. 38-46, 50-51; 113-115).   At that time,
they discovered that the siding had been installed improperly,
without flashing, house wrapping, or drip edges among other
deficiencies, with the result that water had penetrated, causing
significant wood rot and deterioration of the house framing and
underlayment.   Plaintiffs were forced to hire an outside
contractor to repair the damages and were unable to sell their
home until after the repairs were made.   (See, Exhibit "B" to
Plaintiffs' Response to Home Depot's Motion for Summary Judgment;
Young Dep., pp. 114-115, 118).

     It appears that Plaintiffs contacted Home Depot at that time
and informed it of the problems and that Home Depot did attempt

to make some repairs and notified its insurer.  The insurer, however, denied coverage and the parties apparently could not come to a mutually satisfactory resolution.  Plaintiffs then commenced this suit in September, 2015 against Defendants alleging breach of contract, fraud/intentional misrepresentation, negligent misrepresentation, negligence, breach of the implied warranty of reasonable workmanship, breach of expressed warranty, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201.1, *et. seq.*  Defendants then joined Nate's On-the-Go Construction, Inc., the sub-contractor hired to do the installation work on Plaintiff's home, as a third-party defendant seeking contribution and/or indemnity.

Defendants now move for the entry of summary judgment on all of the plaintiffs' claims.

## Summary Judgment Standards

Pursuant to Fed. R. Civ. P. 56(a):

A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

In all cases, the initial burden is on the party seeking summary judgment to point to the evidence which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91

3

L. Ed. 2d 265 (1986); United States v. Donovan, 661 F. 3d 174, 185 (3d Cir. 2011).  "If the moving party carries this initial burden, 'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial' and do more than 'simply show that there is some metaphysical doubt as to the material facts.'" Donovan, supra, (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

The court reviewing a motion for summary judgment should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Burton, supra, (citing Scheidemantle v. Slippery Rock University, State System of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006)). The line between reasonable inferences and impermissible speculation is often "thin," but is nevertheless critical because "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." Halsey v. Pfeiffer, 750 F. 3d 273, 287 (3d Cir. 2014)(quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382, n.12 (3d Cir. 1990) and Fragale & Sons Beverage Co. v. Dill, 760 F.2d 469, 474 (3d Cir. 1985)).

Inferences must flow directly from admissible evidence.  Id. An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving

4

party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). In any event, to survive summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant. <u>Burton</u>, <u>supra</u>,(quoting <u>Jakimas v. Hoffman-LaRoche, Inc.</u>, 485 F.3d 770, 777 (3d Cir. 2007)).

## **Discussion**

*A.  Breach of Contract*

For their first cause of action, Plaintiffs allege that by entering into the contract, Defendants "implicitly and/or impliedly agreed to, *inter alia*, (a) [c]omplete the work by its targeted deadline; (b) [s]upervise and direct all work using the best skill and attention; [and] (c) [c]omply with all applicable Codes," and that Defendants failed to fulfill these obligations in breach of the Home Improvement Installation Contract with the result that Plaintiffs were damaged.  The Home Depot defendants first move for judgment in their favor on the basis of the Georgia Statute of Repose which is 8 years.  In so arguing, Home Depot relies upon the choice of law provision which is set forth in the Home Improvement Installation Contract which the

5

plaintiffs signed and which states on the bottom of the second page: "<u>Governing Law:</u> This contract shall be governed by the laws of the State of Georgia."

The Statute upon which Defendants rely is set forth in the Official Code of Georgia Annotated, O.C.G.A. §9-3-51 and reads as follows:

**§9-3-51.  Limitations on recovery for deficiency in planning, supervising, or constructing improvement to realty or for resulting injuries to property or person**

(a) No action to recover damages:

(1) For any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property;

(2) For injury to property, real or personal, arising out of any such deficiency; or

(3) For injury to the person or for wrongful death arising out of any such deficiency

shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement.

(b) Notwithstanding subsection (a) of this Code section, in the case of such an injury to property or the person or such an injury causing wrongful death, which injury occurred during the seventh or eighth year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within two years after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than ten years after the substantial completion of construction of such an improvement.

The Georgia courts have held that the words "improvement to

6

real property" must be given a commonsense interpretation with
the result that "[a]n improvement, as contemplated by the
statute, denotes a fixed alteration to the real estate." Wilhelm
v. Houston County, 310 Ga. App. 506, 509, n.3, 713 S.E. 2d 660,
663 (2011); Hanna v. McWilliams, 213 Ga. App. 648, 652, 446 S.E.
2d 741, 744 (1994).  "Several factors have arisen as being
important to a commonsense analysis of what constitutes an
improvement to real property," including "(1) is the improvement
permanent in nature; (2) does it add to the value of the realty,
for the purposes for which it was intended to be used; (3) was it
intended by the contracting parties that the 'improvement' in
question be an improvement to real property or did they intend
for it to remain personalty.'" Armstrong v. Royal Lakes
Associates, L.P., 232 Ga. App. 643, 645, 502 S.E. 2d 758, 759
(1998)(quoting Mullis v. Southern Co. Services, Inc., 250 Ga. 90,
94, 296 S.E. 2d 579, 583 (1983)).

     In evaluating whether a contractual choice-of-law clause is
enforceable, federal courts sitting in diversity apply the
choice-of-law rules of the forum state, which in this case is
Pennsylvania.  Amica Mutual Ins. Co. v. Fogel, 656 F.3d 167, 170
(3d Cir. 2011)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313
U.S. 487, 496, 61 S. Ct. 1020, 1021-1022, 85 L. Ed. 1477 (1941));
Homa v. American Express Co., 558 F.3d 225, 227 (3d Cir. 2009).
"Under Pennsylvania choice-of-law rules, 'the first question to

7

be answered in addressing a potential conflict-of-laws dispute is whether the parties explicitly or implicitly have chosen the relevant law," and if so, "[c]ourts should apply the state law that the parties have agreed upon." PNC Mortgage v. Superior Mortgage Corp., Civ. A. No. 09-5084, 2012 U.S. Dist. LEXIS 25276 at *42 (E.D. Pa. Feb. 27, 2012)(quoting Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999) and Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F. Supp. 2d 474, 486 (E.D. Pa. 2009)).

Indeed, "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." Gay v. Creditinform, 511 F.3d 369, 389 (3d Cir. 2007)(quoting Kruzits v. Oluma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994)); Gregoria v. Total Asset Recovery, Inc., Civ. A. No. 12-4315, 2015 U.S. Dist. LEXIS 1818 at *8, *9. (E.D. Pa. Jan. 8, 2015).   This is because "Pennsylvania courts have adopted section 187 of the Restatement, Second, Conflict of Laws," pursuant to which an express choice of law provision will be upheld if "(1) the contract bears a reasonable relationship to the state whose law is chosen to govern and (2) application of the chosen law does not violate a strong public policy that would otherwise protect a party." Kruzits, supra; DeLage Landen Financial Services, Inc. v. Rasa Floors, LP, 792 F. Supp. 2d 812, 825 (E.D. Pa. 2011).   However, the choice of law analysis is

'issue-specific' and the Court must examine whether 'different states' laws apply to different issues in a single case.'" <u>DeLage Landen</u>, <u>supra</u>,(quoting <u>Atlantic Pier Assocs.</u>, 647 F. Supp. 2d at 488).

Here, we can discern no reason to not enforce the choice of law provision set forth in the contract between the parties.  As the pleadings make clear, the Home Depot defendants are Delaware corporations with their principal places of business in Georgia. (Plaintiffs' Complaint, ¶s 2-3; Defendants' Answer, ¶s 2-3). Thus, we find that the choice of law provision bears a reasonable relationship to the State of Georgia.  Plaintiffs do not allege, and we are unaware of any strong Pennsylvania public policy which would be offended by the application of Georgia law to the breach of contract claim in this case.[1]  It further appears that the statute at issue, §9-3-51, has application to the plaintiffs' siding installation job - by Mr. Young's testimony, he considered the new siding to be an improvement to his property which added value and it was intended to be a permanent part of the real estate itself, *i.e.*, they had no intention of taking it with them when they sold the house.  (Exhibit "C," at pp. 51-52).  While we

---

[1] That having been said, the language of the choice of law provision clearly limits the application of Georgia law to the contract itself.  We therefore conclude that the law of Pennsylvania is properly applied to all of the other claims raised in the plaintiffs' complaint.  <u>DeLage Landen</u>, <u>supra</u>,(citing <u>Jiffy Lube Int'l, Inc. v. Jiffy Lube</u>, 848 F. Supp. 569, 576 (E.D. Pa. 1994), <u>Stone St. Servs, Inc. v. Daniels</u>, Civ. A. No. 00-1904, 2000 U.S. Dist. LEXIS 18904 at *4 (E.D. Pa. Dec. 29, 2000) and <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 178 (3d Cir. 1992)).

are sympathetic to the plaintiffs' situation given that they apparently did not discover the existence of the wood rot and other problems attendant to what appears to be the "shortcutting" of the siding installation work until after 8 years had passed, the Georgia courts have ruled that the tolling of a period of limitation by the discovery rule is confined to cases involving bodily harm only.  Fort Oglethorpe Associates II, Ltd. v. Hails Construction Co., 196 Ga. App. 663, 665, 396 S.E. 2d 585, 586 (1990)(citing Corporation of Mercer Univ. v. National Gypsum Co., 258 Ga. 365, 368 S.E. 2d 732 (1988)).  Consequently, we can reach no other conclusion but that the claim for breach of contract is barred by §9-3-51 and Defendants' motion shall therefore be granted and judgment entered in their favor as a matter of law as to Count I of the Complaint.

B.  *Gist of the Action*

The Home Depot Defendants next seek the entry of summary judgment in their favor on Counts II, III and IV of the Complaint, which seek relief on the theories of fraud/intentional misrepresentation, negligent misrepresentation and negligence. In so moving, Defendants invoke the so-called "gist of the action doctrine."

"The gist of the action doctrine prohibits a plaintiff from re-casting ordinary breach of contract claims into tort claims." B.G. Balmer & Co. v. Frank Crystal & Co., 2016 PA Super 202, 2016

Pa. Super. LEXIS 516 at *31 (Pa. Super. Sept. 9, 2016)(citing

Empire Trucking Co., Inc. v. Reading Anthracite Coal Co., 2013 PA

Super 148, 71 A.3d 923, 931, n.2 (Pa. Super. 2013)).  More

particularly, the doctrine:

> "acts to foreclose tort claims: 1) arising solely from the
> contractual relationship between the parties; 2) when the
> alleged duties breached were grounded in the contract
> itself; 3) where any liability stems from the contract; or
> 4) when the tort claim essentially duplicates the breach of
> contract claim or where the success of the tort claim is
> dependent on the success of the breach of contract claim.
> The critical conceptual distinction between a breach of
> contract claim and a tort claim is that the former arises
> out of breaches of duties imposed by mutual consensus
> agreements between particular individuals, while the latter
> arises out of **breaches of duties imposed by law as a matter
> of social policy.**"

Id.(quoting Reardon v. Allegheny College, 2007 PA Super 160, 926

A.2d 477, 486-87 (Pa. Super. 2007)(emphasis in original)).  As

the Pennsylvania Supreme Court recently observed, the "critical

determinative factor in determining whether [a] claim is truly

one in tort, or for breach of contract" is "the nature of the

duty alleged to have been breached, as established by the

underlying averments supporting the claim in a plaintiff's

complaint."  Bruno v. Erie Insurance Co., 2014 PA LEXIS 3319, 106

A.3d 48, 53 (Pa. Super. 2014).  Thus, "the mere existence of a

contract between two parties does not *ipso facto,* classify a

claim by a contracting party for injury or loss suffered as the

result of actions of the other party in performing the contract

as one for breach of contract," ... [i]ndeed, ... a party to a

11

contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party." Id, 106 A.3d at 56-57.

In Pennsylvania, "fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." Moser v. DeSetta, 527 Pa. 157, 163, 589 A.2d 679, 682 (1991); Sarpolis v. Tereshko, 26 F. Supp. 3d 407, 419 (E.D. Pa. 2014). The torts of fraud and intentional misrepresentation are the same and require proof of the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation resulting in injury proximately caused by that reliance. Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 560 (1999); Car Sense, Inc. v. American Special Risk, LLC, 56 F. Supp. 3d 686, 696 (E.D. Pa. 2014). Fraudulent inducement warranting avoidance of a contract may arise upon a showing that one who had no duty to enter into the contract was induced to enter into it by means of fraud or a material misrepresentation knowingly made by another. See, In re Allegheny International, Inc., 954 F.2d 167, 178 (3d Cir.

12

1992)("Under Pennsylvania law, inducing another to enter into a contract by means of fraud or a material misrepresentation, when the other party was under no duty to enter into the contract, is a key element of a claim for fraudulent inducement").

Negligent misrepresentation, on the other hand, requires a showing of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known of its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.  Bilt-Rite Contractors, Inc. v. Architectural Studio, 581 Pa. 454, 466, 866 A.2d 270, 277 (2005); Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 890 (1994).  Thus, the elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words.  Bortz, 729 A.2d at 561; Gongloff Contracting, LLC v. L. Robert Kimball & Associates, 2015 PA Super 149, 119 A.3d 1070, 1075 (Pa. Super. 2015).

Finally, "[a]ny action in negligence is premised on the existence of a duty owed by one party to another," which may "be imposed either through common-law case development or through statute."  Gibbs, supra,(citing Wenrick v. Schloemann-Siemaq

13

Aktiengesellschaft, 523 Pa. 1, 8, 564 A.2d 1244, 1248 (1989) and
Boyce v. U.S. Steel Corp., 446 Pa. 226, 230, 285 A.2d 459, 461
(1971)); DeJesus v. U.S. Department of Veterans Affairs, 479 F.2d
271, 280 (3d Cir. 2007). "To demonstrate negligence, a plaintiff
must establish that the defendant owed a duty of care to the
plaintiff, that duty was breached, the breach resulted in the
plaintiff's injury, and the plaintiff suffered an actual loss or
damages. Kinney-Lindstron v. Medical Care Availability and
Reduction of Error Fund, 621 Pa. 52, 84, n. 17, 73 A.3d 543, 562
(2013)(citing Merlini v. Gallitzin Water Authority, 602 Pa. 346,
980 A.2d 502, 506 (2009)).

     In reviewing the averments in the complaint and the
evidence of record here in conjunction with the preceding legal
principles, we find that summary judgment is properly entered in
favor of the Home Depot defendants on Counts II and III seeking
relief under the theories of fraud/intentional misrepresentation
and negligent misrepresentation.  These counts are premised upon
Home Depot's purportedly false representations, made before,
during and after the completion of the siding replacement work,
that the installation would be completed in a timely fashion
using quality materials and that the work performed would be of a
quality workmanship in accordance with all applicable codes and
that the property would otherwise be fit for habitation and use
by Plaintiffs.  (Complaint, ¶s 34-37).  Given that the nature of

these averments is such that they arise solely out of the contractual relationship between the parties and are grounded in the Home Improvement Contract itself, we find that the claims for intentional and negligent misrepresentation have their genesis in the contract and are nothing more than a re-statement of the claim for breach.  Accordingly, Counts II and III are barred by the gist of the action doctrine.

What's more, by Mr. Young's own admission, the installation work was commenced and completed in a timely fashion - within some six weeks of the contract's signing, and he has no information nor does he believe that the problems at issue were caused by any failure of the siding product itself.  To be sure, Plaintiffs have produced no evidence that the materials which were used were of an inadequate quality.  (Exhibit "C," at pp. 40-42, 132).  Similarly, there is no evidence whatsoever that the property was rendered uninhabitable or that any applicable codes were broken, nor is there any evidence that Home Depot knew of its subcontractor's poor workmanship before Plaintiffs notified it of the wood rot and other problems in or around November, 2013.  (Exhibit "C," pp. 130-131).  Thus we cannot find any evidence to support the allegations that any misrepresentations were made, fraudulently or negligently.  So saying, judgment shall be entered in favor of Home Depot on Counts II and III of the Complaint.

We reach a different conclusion with regard to Count IV of the complaint, alleging general negligence.  As paragraphs 52 and 54 aver, the Home Depot defendants owed a duty of care to Plaintiffs in, *inter alia*, its selection and supervision of subcontractors and this duty was breached by allowing unskilled or inexperienced workers to perform the work and in failing to properly supervise the work performed.  Pennsylvania recognizes causes of action for negligent hiring, supervision and retention and these claims involve violations of broader, social duties owed to all individuals which exist regardless of the presence of a contract.  See, e.g.,Telwell, Inc. v. Grandbridge Real Estate Capital LLC, 2016 PA Super 159, 2016 PA. Super. LEXIS 401, *20 (Pa. Super. July 21, 2016);  Yee v. Roberts, 2005 PA Super 240, 848 A.2d 906, 914 (Pa. Super. 2005);  Heller v. Patwil Homes, 1998 PA Super LEXIS 837, 713 A.2d 105 (Pa. Super. 1998);  Selective Insurance Co. Of America v. Indian Harbor Insurance Co., Civ. A. No. 16-1464, 2016 U.S. Dist. LEXIS 81671 (E.D. Pa. June 23, 2016).  This is also the case here: it was Home Depot which determined to fulfill the contract with Plaintiffs by hiring Nate's On-the-Go Construction to install the siding which it supplied and in so doing, assumed the duty to ensure that the work was done properly.  There is certainly evidence on this record that this duty was breached and that the plaintiffs suffered damages as a result.  The motion for summary judgment

16

shall therefore be denied as to Count IV.

    *C.  Implied Warranty of Reasonable Workmanship*

    Home Depot next moves for judgment in its favor on Count V of the Complaint which raises a claim for breach of the implied warranty of reasonable workmanship on the grounds that the implied warranty applies only to sales of newly-built homes. Implied warranties are generally not favored by law and are to be construed narrowly.  Rhone Poulenc Rorer Pharmaceuticals, Inc., 112 F.3d 695, 697 (3d Cir. 1997).  Inasmuch as we can find no cases in which the Pennsylvania courts have applied the implied warranty of reasonable workmanship to anything other than new-home construction and Plaintiffs make no argument whatsoever in response to Defendants' assertions, we shall agree and enter judgment in favor of the moving defendants as a matter law with respect to Count V of the Complaint.  See generally, Conway v. Cutler Group, Inc., 626 Pa. 660, 99 A.3d 67 (2014); Elderkin v. Gaster, 447 Pa. 118, 288 A.2d 771 (1972); Groff v. Pete Kingsley Building, Inc., 374 Pa. Super. 377, 543 A.2d 128 (1988); Groover v. Magnavox Co., 71 F.R.D. 638, 639 (W.D. Pa. 1976).

    *D.  Breach of Express Warranty*

    The Home Depot defendants next seek judgment on Count VI of Plaintiffs' complaint, which raises a claim for breach of a purportedly expressed warranty that "the installation of the siding was a lifetime guarantee to have been performed in a good

and workmanlike manner."   (Complaint, ¶ 64).

"Express warranties arise from the representations of the parties which are made the basis of the bargain and do not result from the independent operation of state law." Michael v. Shiley, Inc., 46 F.3d 1316, 1325 (3d Cir. 1995)(citing 13 Pa. C.S.A. §2313); McPhee v. Depuy Orthopedics, Inc., 989 F. Supp. 2d 451, 465 (W.D. Pa. 2012).  "In order to establish that there has been a breach of an express warranty, a plaintiff must demonstrate that some form of promise or affirmative statement was made; a mere recitation of the elements of a cause of action, absent any factual support, specification of a particular promise that became the basis of the bargain, or a showing that the promise was directed at the consumer, is insufficient to withstand dismissal."   McPhee, supra,(quoting Gross v. Stryker Corp. 858 F. Supp. 2d 466 (W.D. Pa. 2012).

A claim for breach of express warranty thus sounds more in contract than in tort.  Dougherty v. C.R. Bard, Inc., Civ. A. No. 11-6048, 2012 U.S. Dist. LEXIS 100374 at *35 (E.D. Pa. July 18, 2012).  Further, "[b]ecause 'express warranties are specifically negotiated (rather than automatically implied by law), the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them.'" Bentzley v. Medtronic, Inc., 827 F. Supp. 2d 443, 455 (E.D. Pa. 2011)(quoting Goodman v. PPG Indus., Inc., 2004 PA

Super 151, 849 A.2d 1239, 1243 (Pa. Super. 2004)).

Here, while the plaintiffs' complaint alleges that the Home Depot defendants "expressly warranted that the completed work would be the product of reasonable workmanship" and "that the installation of the siding was a lifetime guarantee to have been performed in a good and workmanlike manner," Mr. Young admitted in his deposition that he has no documents or other evidence to support these averments; rather he now guesses that it was implied or "maybe just verbal." (Complaint, ¶s 64, 65; Exhibit "C," pp. 116-117). There *is* a Craftsmanship Warranty contained within the Home Improvement Installation Contract which Plaintiffs signed, but it reads as follows:

> In addition to any warranty extended to Purchaser directly from the manufacturer of the product(s) or materials used in the installation, should the workmanship or application prove faulty within the period specified below from the date the work specified in this contract is completed, Home Depot will, upon notice from the Purchaser, cause such faults to be corrected by repair at no additional cost to the Purchaser. This craftsmanship warranty is NOT TRANSFERABLE to a subsequent owner
>
> - Lifetime on any RENOVATIONS WINDOW
>
> - Three (3) years on any product related to the SIDING project.
>
> This craftsmanship limited warranty excludes acts of God, deliberate damage and/or damages caused by vandalism or removal and/or alteration of the products or materials by the Purchaser or a party other than Home Depot or its authorized contractor, even in the event such action is authorized by Purchaser. In the event that Purchaser, by themselves or through another party, performs work which causes the removal and/or alteration of the products or materials during the applicable warranty period, this

craftsmanship limited warranty shall be void, and all claims pursuant to it shall be forfeited.

Thus, although there was an express warranty given to Plaintiffs by Defendants, by its clear terms, it was for the limited period of three years from the date of completion which, in this case, was July 8, 2005. (Exhibit "C," pp. 45-49). Hence this warranty expired on or about July 8, 2008 some 7 years before this suit was commenced. Accordingly, we find that judgment is properly entered in Home Depot's favor as a matter of law on the claim for breach of express warranty in Count VI of the Young's complaint.

   *E. Unfair Trade Practices and Consumer Protection Law*

   In Count VII of their complaint, the Youngs contend that Home Depot also violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2(4)(vi), (vii), (ix), (xiv), (xvi) and (xxii) with the result that they are entitled to treble damages, reasonable attorneys' fees and costs, among other relief pursuant to 73 P.S. §201-9.2. By this motion, Defendants now move for the entry of judgment in their favor as a matter of law on this count as well.

   "The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 2012 PA Super 60, 40 A.3d 145, 151 (Pa. Super. 2012)(quoting 73 P.S. §201-3). The purpose of the UTPCPL is to protect the

public from unfair or deceptive business practices and it is to
be liberally construed to effectuate the legislative goal of
consumer protection.  Id.(citing Com., by Creamer v. Monumental
Properties, Inc., 459 Pa. 450, 459, 329 A.2d 812, 816 (1974) and
Agliori v. Metropolitan Life Insurance Co., 2005 PA Super 253,
879 A.2d 315, 318 (Pa. Super. 2005)).  "In addition, the remedies
of the UTPCPL are not exclusive, but are in addition to other
causes of action and remedies."  Boehm v. Riversource Life
Insurance Co., 2015 PA Super 120, 117 A.3d 308, 321 (Pa. Super.
2015)(quoting Wallace v. Pastore, 1999 PA Super 297, 742 A.2d
1090, 1092 (Pa. Super. 1999)).

Section 201-2(4) lists twenty enumerated practices which
constitute actionable "unfair methods of competition" or "unfair
or deceptive acts or practices."  Id.(quoting Bennett, supra).
The UTPCPL also contains a catchall provision at 73 P.S. §201-
4(xxi), which prohibits "[e]ngaging in any other fraudulent or
deceptive conduct which creates a likelihood of confusion or of
misunderstanding."  Id.  Regardless of which subsection a
plaintiff in a private action proceeds under, he must show that
he justifiably relied on the defendant's wrongful conduct or
representation and that he suffered harm because of that
reliance.  Kern v. Lehigh Valley Hospital, 2015 PA Super 19, 108
A.3d 1281, 1289-1290 (Pa. Super. 2015).

As noted, Plaintiffs' complaint seeks to hold Home Depot

21

liable under some six of the subsections[2] delineated in 73 P.S.
§201-2(4), which are:

> (vi) Representing that goods are original or new if they are
> deteriorated, altered, reconditioned, reclaimed, used or
> secondhand;
>
> ...
>
> (vii) Representing that goods or services are of a
> particular standard, quality or grade, or that goods are of
> a particular style or model, if they are another;
>
> ...
>
> (ix) Advertising goods or services with intent not to sell
> them as advertised;
>
> ...
>
> (xiv) Failing to comply with the terms of any written
> guarantee or warranty given to the buyer at, prior to or
> after a contract for the purchase of goods or services is
> made;
>
> ...
>
> (xvi) Making repairs, improvements or replacements on
> tangible real or personal property, of a nature or quality
> inferior to or below the standard of that agreed to in
> writing;
>
> ...

Home Depot submits that Plaintiffs have no evidence to support

---

[2] Plaintiffs also pled a violation of subsection (xxii), which does
not exist.  While we could infer that Plaintiffs intended to invoke the
catchall provision set forth at subsection (xxi), given that Plaintiffs'
opposition brief to the within motion only addressed the first argument raised
by Defendants, (to wit, the applicability of the Georgia choice of law
provision to bar the breach of contract claim), it therefore appears that
Plaintiffs are not challenging the defendants' other arguments.  Because this
is a motion for summary judgment, however, we are precluded from deeming the
motion as uncontested by our Local Rules and hence must evaluate the merits of
the case.  See, Local Rule of Civil Procedure 7.1©.  That having been said,
however, we decline to consider this matter as also raising a claim under the
UTPCPL's catchall provision.

any of these alleged violations of the UTPCPL and, for the most part, we agree that there is no evidence on this record to support the claims that Defendants violated subsections (vi), (vii), (ix), or (xiv).  Accordingly, judgment in favor of the Home Depot defendants shall be entered as to Plaintiffs' Unfair Trade Practices claims which were brought pursuant to those subsections.

We disagree, however, that there is insufficient evidence to warrant submission to the jury of the Plaintiffs' claim that subsection (xvi) was violated.  A close reading of the Home Improvement Installation Contract reveals that Home Depot agreed "to arrange for the work to be performed by a qualified installer."  From the testimony of Mr. Young and the letter report of Frank Puia, the contractor who was hired to repair the damages to the house, a genuine issue of material fact arises as to whether the installer that was hired was in fact qualified to perform the work.  Consequently, summary judgment shall be denied as to this claim.

For all of the reasons set forth above, the motion for summary judgment of the Home Depot defendants is granted in part and denied in part in accordance with the attached Order.